RECEIVED
MAY - 9 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

| | |
|---|---|
| TONYA H. CHELETTE | CIVIL ACTION NO. 1:14-CV-03294 |
| VERSUS | JUDGE TRIMBLE |
| U.S. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE PEREZ-MONTES |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This case is before the undersigned for a Supplemental Report and Recommendation to consider Chelette's objections (Doc. 18) to the original Report and Recommendation (Doc. 17).

I. Procedural History

Tonya H. Chelette filed an application for disability insurance benefits ("DIB") on September 24, 2013, alleging a disability onset date of February 28, 2011 (Doc. 6-1, p. 138/343)[1] due to bipolar I disorder, severe depression, and anxiety disorder (Doc. 6-1, p. 156/343). That application was denied by the Social Security Administration ("SSA") (Doc. 6-1, p. 72/343).

A de novo hearing was held before an administrative law judge ("ALJ") on June 4, 2014, at which Chelette appeared with her attorney and a vocational expert ("VE") (Doc. 6-1, pp. 32-34/343). The ALJ found that Chelette last met the insured status

---

[1] Chelette admits the stopped working on February 28, 2011 because she fell and broke her ankle, which required surgery and use of a wheel chair for four months, which worsened her depression and made her unable to work as of February 28, 2011 (Tr. p. 153).

requirement of the Social Security Act on December 31, 2013 and meets the insured status requirement for Medicare Part A benefits through June 30, 2016[2] (Doc. 6-1, p. 17/343). The ALJ also found that Chelette cannot perform her past relevant work, but can do work at all exertional levels and has nonexertional limitations of not being able to do complex work, cannot have more than occasional interaction with others, and is more comfortable working with things than with people (Doc. 6-1, p. 18/343). The ALJ further found that Chelette has not worked since February 28, 2011, she is a younger individual with at least a high school education, and she cannot perform any of her past relevant work (Doc. 6-1, p. 26/343), but there are jobs she can do such as mail clerk and garment sorter (Doc. 6-1, p. 27/343). The ALJ concluded that Chelette was not disabled as defined in the Social Security Act through December 31, 2013, the date last insured, and was not disabled for purposes of Medicare benefits (MQGE) at any time through date of his decision on June 26, 2014 (Doc. 6-1, p. 27/343).

Chelette requested a review of the ALJ's decision, but the Appeals Council declined to review it (Doc. 6-1, p. 4/343) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Chelette next filed an appeal in this court, seeking judicial review of the final decision of the Commissioner. After briefs were filed (Docs. 14, 15, 16), Chelette's

---

[2] An individual is statutorily entitled to Medicare, Part A after receiving or being entitled to receive Social Security disability insurance benefits for 24 months. See 42 U.S.C. § 1395(c).

claims were reviewed and it was recommended that Chelette's appeal be denied (Doc. 17).[1] Chelette objected to that recommendation (Doc. 18), contending: (1) her bipolar disorder became disabling in April 2013 rather than in August 2013; (2) she proved the duration requirement because her bipolar disorder was expected to last at least twelve months; (3) the ALJ erred in failing to call a medical expert to determine her disability onset date; and (4) Dr. Moore's opinion as to the limiting effects of Chelette's bipolar disorder and depression are entitled to probative weight.

The District Judge referred Chelette's objections to the undersigned for consideration (Doc. 20).

II. ALJ's Findings and Conclusions

The ALJ found that Chelette: (1) last met the disability insured status requirements on December 31, 2013; (2) meets the insured status requirements for Medicare Part A benefits through June 30, 2016; (3) has not engaged in substantial gainful activity since February 28, 2011 (her alleged onset date); and (4) has a severe impairment of bipolar disorder; but (5) does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Doc. 6-1, pp. 17-18/343). The ALJ then found that Chelette has the residual functional capacity to perform the full range of work at all exertional levels, but has nonexertional limitations of inability to perform complex work, can have no more than occasional interaction with people, and is more comfortable working with things than with

---

[1] The hearing and medical records in this case are summarized in the first Report and Recommendation (Doc. 17).

3

people (Doc. 6-1, pp. 20-21/343). The ALJ further found that Chelette is unable to perform her past relevant work as a library technician, but can perform such work as a mail clerk (light, SVP-2), or a garment sorter (light, SVP-2) (Doc. 6-1, p. 27/343).

The ALJ's analysis thus ended with a finding that Chelette was not disabled within the meaning of the Social Security Act at any time through December 31, 2013, the date last insured, and was not disabled for purposes of Medicare benefits (MQGE) at any time through the date of the ALJ's decision on June 26, 2014 (Doc. 6-1, p. 27/343).

III. Analysis of Chelette's Objections

A. Disability Onset Date

Chelette contends in her objections (Doc. 18) that her bipolar disorder became disabling in April 2013 rather than in August 2013, as found by the ALJ. Chelette cites Spellman v. Shalala, 1 F.3d 357, 361 (5th Cir. 1993), and Kettering v. Astrue, 940 F.Supp.2d 521, 529 (S.D.Tex. 2013), to support her contention that the ALJ erred in failing to employ a medical expert to testify at the hearing as to Chelette's disability onset date. Chelette refers to the ALJ's statement that Chelette "may have had difficulty working for a few months beginning in August 2013," but she was able to work by May 2014[2] (Doc. 6-1, p. 26/343).

The starting point of determining the onset date is the claimant's allegation as to when the disability began, and the date the disability caused the claimant to stop

---

[2] The Report and Recommendation did not state, as Chelette alleges, that Chelette was able to work again in May 2014 because her foot had healed. The Report and Recommendation stated that Chelette's foot was healed by July 2011 (Doc. 17, p. 33/37).

work is very significant. Nevertheless, the medical evidence is the primary element in the determination of the onset of disability. See Orphey v. Massanari, 268 F.3d 1063, *3 (5th Cir. 2001) (citing Spellman, 1 F.3d at 361). In cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Commissioner must infer the onset date, SSR 83-20 requires that the inference be based on an informed judgment. The Commissioner cannot make such an inference without the assistance of a medical advisor. See Spellman, 1 F.3d at 362.

Chelette alleged in her application for benefits that she was disabled on February 28, 2011 due to her "bipolar I, severe depression, anxiety disorder," and "broken ankle" (and morbid obesity) which confined her to a wheel chair for several months and worsened her depression (Doc. 6-1 p. 153/343). The ALJ accepted Chelette's allegation that February 28, 2011 was her disability onset date, and found that Chelette did not remain disabled for twelve months (Doc. 6-1, p. 18/343). Chelette's foot healed in five months, she underwent a gastric bypass in October 2011, and she weighed 190 pounds by July 2012 (Doc. 6-1, p. 18/343).

Chelette also argues that she became disabled in April 2013 due to increased severity of her bipolar disorder. Bipolar disorder is a slowly progressive impairment. See Walton v Halter, 243 F.3d 703, 709 (3d Cir. 2001); see also Draper v. Colvin, 2015 WL 3545387, *2 (C.D.Ill. 2015).

The ALJ noted that, after April 2011, Chelette did not return to the doctor for her mental health problems until April 2013. Chelette complained of anxiety attacks

5

in April 2013 (Doc. 6, Tr. p. 204/343), spurts of energy alternating with depression in May 2013, not sleeping in July 2013, the increase of her Celexa dosage and the addition of Seroquel in July 2013, and her hospitalization at Oceans Behavioral Hospital in August 2013. The ALJ stated that Chelette may have had difficulty working from August 2013 (the first time she was hospitalized) through May 2014 (when Dr. Tramontana and Dr. Thrasher both found she was able to do some type of work), and found Chelette had not shown she was unable to work for twelve months. The ALJ concluded that Chelette had not carried her burden of proving she was unable to work for at least twelve months.

The ALJ erred by inferring Chelette "may have had difficulty working for a few months beginning in August 2013" (Doc. 6-1, p. 25/343). The evidence does not provide a clear date on which Chelette became unable to work due to her bipolar disorder. Chelette began complaining about worsening symptoms in April 2013. Therefore, the ALJ was required to employ a medical expert to assist him in determining Chelette's disability onset date. See Spellman, 1 F.3d at 362.

Moreover, although Chelette's disability insured status ended on December 31, 2013, Chelette correctly points out that her bipolar disorder was expected to last at least twelve months and, therefore, could have formed the basis of a finding that she was disabled prior to December 31, 2013. Disability is defined by the Social Security Act "(as) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

6

of not less than 12 months." See 42 U.S.C. s 423(d)(1)(A); see also Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979). Disability must be proven to exist during the time that the claimant is insured within the meaning of the special insured status requirements of the Act. See Demandre, 591 F.2d at 1090. Therefore, on remand, the ALJ must consider whether Chelette's disability began before her disability insured status ended and whether it lasted at least twelve months.[3]

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Chelette to a decision in his favor based upon the existing record. The record is inconclusive as to whether Chelette meets the duration requirements for disability. Accordingly, Chelette's case should be remanded to the ALJ for a determination of: (1) when Chelette became unable to work in 2013 due to her bipolar disorder and depression (her 2013 disability onset date); and (2) whether her disability lasted at least twelve consecutive months. The ALJ should employ a mental health expert to assist him in determining when Chelette became unable to work in 2013 and how long she was unable to work.

B. Dr. Moore's Opinion

Chelette also contends the ALJ erred in failing to give any probative weight to Dr. Moore's opinion as to the limiting effects of Chelette's bipolar disorder and

---

[3] It is noted that, if a claimant does not follow the prescribed treatment without a good reason, she will not be found disabled. See 20 C.F.R. § 404.1530(b) & § 416.930(b). Also, if an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. See Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1980).

depression. Although Chelette contends the ALJ gave Dr. Moore's opinion no probative weight, she appears to be complaining that the ALJ did not give Dr. Moore's opinion controlling weight.

Dr. Moore is a family practice doctor who is one of Chelette's long-time treating physicians. The other doctors who treated Chelette or offered opinions in this case were psychologists and psychiatrists. Chelette complains that the ALJ rejected Dr. Moore's opinion in favor of the opinions of Dr. Tramontana and Dr. Thrasher, both psychologists.

The deference given to opinions of treating physicians is not unlimited. As with any expert witness, the treating physician's opinion is subject to criticism as being outside his or her area of expertise. See Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991). The opinion of a specialist generally is accorded greater weight than that of a non-specialist. See Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) (citing Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994)).

When good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief, conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support

provided by other evidence, consistency of opinion with record, and specialization. See Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001) (citing Newton, 209 F.3d at 456).

Dr. Moore's opinion was inconsistent with the opinions of the psychologists (Doc. 6-1, pp. 23-24/343). In assessing the evidence, the ALJ noted that Dr. Moore is a general practice physician and stated that, although Dr. Moore had a long-standing relationship with Chelette, his opinion as to Chelette's mental health problems was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques" (Doc. 6-1, pp. 23-24/343). The ALJ further noted that Dr. Moore had not documented even one mental status exam and his opinion appeared to be based solely on Chelette's objective reports (Doc. 6-1, p. 23/343). The ALJ stated that he gave "little weight" to the opinion of Dr. Moore and significant weight to the opinions of Dr. Thrasher and Dr. Tramontana, who are both psychologists (Doc. 6-1, p. 26/343).

Since the ALJ adequately supported his decision to give less weight to Dr. Moore than to the opinions of the psychologists, the ALJ did not err by failing to accord Dr. Moore's opinion controlling weight.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Chelette's case be REMANDED to the Commissioner for further proceedings to determine her 2013 disability onset date and the duration of that disability.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have **fourteen (14)** days from service of this Report

and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14)** days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 6 day of May 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge